```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED:  3/31/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KIMBERLY GLOVER,

        Plaintiff,

-against-

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

---

20-cv-6802 (ALC)

**OPINION & ORDER**

**ANDREW L. CARTER, United States District Judge:**

Plaintiff Kimberly Glover brings this action against the Commissioner of Social Security ("Commissioner" or "Defendant"), challenging the Commissioner's final decision that Plaintiff was not entitled to disability insurance benefits ("DIB") under Title II of the Social Security Act. 42 U.S.C. §§ 401–433.

## PROCEDURAL HISTORY[1]

On June 22, 2017, Ms. Glover applied for disability and disability insurance benefits, alleging disability from December 1, 2016. R. at 10. She also applied for social security insurance ("SSI") on June 23, 2017. *Id.* The alleged impairments were scoliosis of the thoracic spine, depressive disorder, anxiety disorder, and social phobia. R. at 12. On September 23, 2017, Ms. Glover's claim was initially denied. R. at 10. She subsequently requested a hearing on September 27, 2017. *Id.* On May 28, 2019, a video hearing was held before Administrative Law Judge ("ALJ") John Aletta. R. at 9-10. Ms. Glover appeared at the video hearing represented by Daniel Berger. R. at 10. Both Ms. Glover and Vocational Expert ("VE") Edmond J. Calandra testified at the hearing. R. at 26. The ALJ issued an unfavorable decision

---

[1] "R" refers to the Certified Administrative Record filed at ECF No. 13. Pagination follows original pagination in the Certified Administrative Record

on July 2, 2019, and the Social Security Administration Appeals Council denied review. As such the ALJ's decision was final and subject to review under the APA. making the ALJ's decision final. R. at 1, 7.

Ms. Glover brought this action in the Southern District of New York on August 24, 2020, following the denied request for reconsideration. On August 15, 2021, Ms. Glover moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 56(a). And Defendant cross-moved for judgment on the pleadings on November 29, 2021.

## BACKGROUND

### I. Non-Medical Evidence

*A. Plaintiff's Testimony*

At the time of her hearing before ALJ Aletta, Ms. Glover was 33 years old. R. at 30. She resides with her mother, stepfather, and her son. *Id.* She has a high school diploma. R. at 31. At the time, she was not working, and she relied heavily on her mother's assistance due to her scoliosis and phobia of people. She had been hospitalized on two separate occasions due to nervous breakdowns. R. at 32- 35. She is the primary caregiver to her son. She requires the assistance of her mother and stepfather with certain childcare responsibilities, including taking her son to school, attending parent-teacher conferences, and helping with homework. R. at 37-38. She was able to independently take care of her personal hygiene but other activities such as doing the laundry and grocery shopping, her mother does on her behalf. R. at 38-39. Additionally, she suffers from paranoia and hears voices which disrupt her ability to concentrate R. at 41-43.

B.  *Edmond J. Calandra - Vocational Expert*

Mr. Calandra examined a situation in which an individual would have similar conditions as Ms. Glover and testified to the likelihood of employment. R. at 44. Mr. Calandra was asked to determine what employment opportunity could a hypothetical individual with the ability to perform simple tasks with simple routine instructions, medium exertional level, and ability to tolerate occasional interaction with coworkers, have. *Id.* ALJ Aletta posed various hypotheticals to Calandra to make this assessment.

Mr. Calandra stated that an individual with all the conditions Ms. Glover possesses would have an opportunity to work as a Janitor (DOT 381.687-018), Kitchen Helper (DOT 318.697-010), or Hand Packer (DOT 920.587-018). R. at 46. Specifically, Mr. Calandra's assessment was based on an individual who was unable to follow a strict production rate pace, can recall and execute simple routine instructions, unable to work with the general public but has occasional interaction with coworkers, can maintain basic standards of personal behavior found in the workplace, can travel to familiar locations, and able to tolerate on occasion minor change in work setting and work procedure. *Id.*

Mr. Calandra was then offered a second hypothetical by the ALJ, in which the criteria only changed the level of exertion to light, but all remaining characteristics previously analyzed were the same. R. at 47. In response, Mr. Calandra stated that the hypothetical individual could still work as a Small Parts Assembler (DOT 706.684-022), a Package Sorter (DOT 222.687-022) or an Electrical Assembler (DOT 729.687-010). *Id.*

In another scenario, Mr. Calandra stated that a hypothetical person who was not able to interact with coworkers appropriately on occasion would be precluded from all gainful employment. R. at 49. He defined on occasion as one-third of the day. *Id.* Mr. Calandra also

stated an individual who was off-task 11 percent of the time during an eight-hour workday would be unable to perform any job in the national economy. *Id.* Mr. Calandra also confirmed that an individual who was absent from work two times per month on a random unscheduled basis would not be able to secure employment. *Id.* He also confirmed that the Dictionary of Occupational Titles ("DOT") did not specifically addresses the limitation of off-task behavior, absences from work, or the inability to interact appropriately with coworker. *Id.* In response to the ALJ's hypothetical scenarios, Mr. Calandra confirmed that a job would be unlikely to tolerate more than eight hours per month for either absences or tardiness. R. at 50.

C. *Function Report*

Ms. Glover's mother completed a function report on her behalf on July 24, 2014. R. at 205. She indicated that she could take care of her child with the help of her mother and stepfather. R. at 199. She stated she was unable to cook or complete household chores. R. at 200.

She had no problems with her personal care, and although she scarcely went outside due to her phobia of people, she would go out shopping with her family once a month. R. at 201. Ms. Glover stated that her hobbies were watching television on a daily basis and that she had no social activities. R. at 202. Ms. Glover stated that due to her scoliosis she had difficulty lifting, standing, walking, sitting, climbing chairs, kneeling, squatting, and reaching. R. at 203. Ms. Glover also indicated that she utilizes a back brace to aid her with walking and sitting. R. at 204. Her mobility is limited to being able to walk only for three blocks until she must stop and rest. *Id.* In addition, Ms. Glover is only able to continuously walk for five minutes continuously before stopping. *Id.* Ms. Glover suffers from attention deficit/hyperactivity disorder ("ADHD") and short-term memory loss. R. at 204-205. Ms. Glover's ADHD prevents her from following

instructions, both spoken and written, and any change in schedule affects her, with the result being depression.  R. at 205.

**II. Treatment History**

Ms. Glover received psychiatric care at the Bronx Lebanon Hospital from December 2016 to April 2018.  R. at 243-63, 293-317.  Ms. Glover has been a patient of psychiatrist Dr. Christina Toba since July 8, 2015.  R. at 323.  She saw Dr. Toba from December 2, 2016 through April 18, 2018.  R. at 327.

On December 2, 2016, Dr. Toba assessed Ms. Glover's depression levels at a 7 on a 0-10 scale.  R. at 249-50.  Ms. Glover had exhibited better sleep with 50mg of Seroquel, and Dr. Toba at that time saw no need to increase the dosage to 100mg.  *Id.*  The following month, on January 24, 2017, Dr. Toba's assessment stated that Ms. Glover's depression/anxiety required ongoing stabilization.  R. at 246-248.  Dr. Toba made several adjustments to Ms. Glover's prescriptions and recommended ongoing individual therapy.  *Id.*  In a February 2017 assessment, Dr. Toba noted that Ms. Glover's depression/anxiety had improved, decreasing her depression levels from a 7/10 to a 5/10.  R. at 243-45.  Ms. Glover's medication intake remained the same.  *Id.*

On April 8, 2018, Dr. Toba provided a Medical Source Statement, which showed Ms. Glover was diagnosed with clinical depression, anxiety, and social phobia.  R. at 324.  The statement noted that Ms. Glover had poor memory, sleep disturbance, mood disturbance, emotional liability, psychomotor agitation or retardation, feelings of guilt/worthlessness, perceptual disturbance, social withdrawal, or isolation, decreased energy, persistent irrational fears, and generalized persistent anxiety.  *Id.*  Ms. Glover was prescribed Fluoxetine, Seroquel, and Vistaril.  R. at 325.  The statement noted Ms. Glover had "extreme loss" when it pertained to her capabilities to perform basic mental activities of work on a regular and continuing basis.  *Id.*  Dr.

Toba's statement also noted Ms. Glover's conditions had persisted since December 1, 2016. R. at 327. On her follow-up visits between March 22, 2017 and April 18, 2018, Ms. Glover's depression was characterized as fair/improved. R. at 251-63, 293-95, 298-324. Her medication remained consistent.

On June 28, 2018, Ms. Glover switched providers and began seeing Dr. George Nodarse. R. at 334-337. Dr. Nodarse noted that Ms. Glover failed to keep appointments but was willing to participate in care coordination assistance. *Id.* For her follow-ups on July 9, 2018, August 27, 2018, September 10, 2018, Ms. Glover's depression/anxiety had improved, and her depression levels were at a 3/10. R. at 338-57. Dr. Nodarse stated that Ms. Glover's mental status was within normal limits. *Id.*

On October 1, 2018, Ms. Glover was admitted to the emergency room suffering from agitation and paranoia. R. at 359-377. She requested to see a psychiatrist and asked to be sedated. *Id.* Ms. Glover was discharged on October 3, 2018, after various doctor treated her. R. at 378-382. Ms. Glover was discharged to her mother. *Id.*

On October 8, 2018, Ms. Glover saw Dr. Nodarse and resident Dr. Jean Mello. R. 382-386. Dr. Mello increased Ms. Glover's Prozac from 40 mg to 60mg, due to her current symptoms. R. at 382-88. Dr. Mello continued serving as Ms. Glover's primary psychiatric provider through April 11, 2019. R. at 438-42. Ms. Glover was inconsistent with her follow up appointments with Dr. Mello. R. at 387-91, 415-42. Dr. Mello noted that Ms. Glover suffered from uncontrolled hypertension, hyperlipidemia, and lumbar disc disease with radiculopathy. R. at 415-18. Dr. Mello recommended that Ms. Glover needed to continue with her current medication. R. at 438-42.

On November 29, 2018, Ms. Glover was treated/transported to the emergency room suffering from Tachycardia and Abdominal Distension. R. at 393-415, 443-45. Ms. Glover stated discomfort for the past month and abdominal distention for 3 months. *Id.*

From May 15, 2017 to March 4, 2019, Ms. Glover also visited social worker Tonya Gaston. R. at 251-57, 301-09, 334-57, 415-32. Ms. Gaston noted that Ms. Glover suffered from Depression, Anxiety, Degenerative Lumbar Spinal Stenosis, Learning Disabilities, and Uncontrolled Hypertension. R. at 287-89, 301-09, 415-18. Ms. Gaston noted on their last session that Ms. Glover required treatment at a different level of care and that Ms. Glover's psychiatric symptoms persisted and continued to impair her functionality in important life areas. R. at 429-32.

In addition to Ms. Glover's continued psychiatric treatment, on March 5, 2019, Dr. Ariyo Ihimovan submitted a surgery request for Ms. Glover which was successfully administered on March 13, 2019. R. at 434-35, 446-48. Ms. Glover's last appointment occurred on April 11, 2019. In which Dr. Bello recommended Ms. Glover to continue with her current medication. R. at 438-42.

### III. Opinion Evidence

**A. ALJ Hearing Opinion**

Applying the five-step sequential evaluation for adjudicating Social Security disability claims, the ALJ found the following. At step one, Plaintiff had not engaged in substantial gainful activity since December 1, 2016. R. at 12. At step two, it was acknowledged that Plaintiff suffered from the following severe impairments: scoliosis of the thoracic spine, depressive disorder, anxiety disorder, and social phobia. *Id.* At step three, the ALJ found that Plaintiff's impairments, alone or in combination, did not meet the medical equivalent to the

severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1 (the "Listings"). R. at 13.  Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §404.1567(b) and 416.967(b) with these limitations, Plaintiff can frequently stoop, kneel, crouch and crawl, can perform simple routine tasks but not strictly, production rate pace, recall and execution must be simple, cannot work with the general public but can tolerate occasional interaction with co-worker, and Plaintiff has a tolerance of minor changes in work setting and procedures. *Id.*  The ALJ then found that Plaintiff had no past relevant work under 20 C.F.R. 404.1565 and 416.965, R. at 17.  The demands of the Plaintiff's past work exceeded his RFC.  R. at 16.  At step five, the ALJ considered Plaintiff's age, educational and vocational background, RFC, VE testimony, and the Medical-Vocational Guidelines 204.00, set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2. R. at 18-19.  The ALJ concluded that with adjustments, there are a substantial amount of available jobs Plaintiff can acquire and perform.  *Id.*  The ALJ therefore found that Plaintiff was not disabled within the meaning of the Act.  *Id.*

    **B.  State Agency Expert Dr. K. Lieber-Diaz**

On August 2, 2017, Dr. Lieber-Diaz performed a psychiatric review of Ms. Glover's depressive, bipolar, anxiety and obsessive disorders.  R. at 58.  The review evaluated whether she suffered from pain, sustained concentration, persistence limitations, social interaction limitations, and ability to adapt limitations.  R. at 59.  Based on Ms. Glover's statements as well as medical and non-medical evidence, Dr. Lieber-Diaz concluded that, although Ms. Glover's ailments could have reasonably produced her symptoms, the intensity, persistence and limiting effects of these symptoms were generally not consistent with the evidence of record.  R. at 60.  He concluded that Ms. Glover was not disabled.  R. at 65.

8

**LEGAL STANDARD**

A. **Judicial Review of the Commissioner's Determination**

District courts review a Commissioner's final decision pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3), and "may only set aside a determination by the Commissioner if it is based on legal error or not supported by substantial evidence in the record." *Cole v. Colvin*, 12-cv-8597, 2014 WL 1224568, at *2 (S.D.N.Y. Mar. 24, 2014). "The Second Circuit has defined substantial evidence as 'more than a mere scintilla, and as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Grant v. Colvin*, No. 14-CV-7761, 2016 WL 1092685, at *3 (S.D.N.Y. Mar. 21, 2016) (quoting *Bushey v. Colvin*, 607 F. App'x 114, 115 (2d Cir. 2015)) (citation and internal quotation marks omitted).

"The substantial evidence standard means that once an ALJ finds facts, a district court can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Ortiz v. Saul*, No. 19-cv-942, 2020 WL 1150213 (S.D.N.Y. Mar. 2020) (quoting *Brault v. Soc. Sec. Admin*., 683 F.3d 443, 448 (2d Cir. 2012). "In other words, this Court must afford the Commissioner's determination considerable deference and may not "substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a difference result upon a *de novo* review.'" *Briody v. Commissioner of Social Security*, No. 18-cv-7006, 2019 WL 4805563, at *7 (S.D.N.Y. Sept. 30, 2019) (quoting *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir. 1991) (internal citation and quotation marks omitted)).

B. **Commissioner's Determination of Disability**

    1. *Definition of Disability*

A disability, under the Social Security Act, is defined as one that renders a person unable to "engaged in any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." U.S.C. §423(d)(1)(A); *accord* 42 U.S.C. §1382c(a)(3)(A). Further, "[t]he impairment must be 'of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Shaw v. Charter*, 221 F.3d 126, 131-32 (2d Cir. 2000) (quoting 42 U.S.C. §423(d)(2)(A)).

### 2. The Commissioner's Five Step Analysis of Disability Claims

To determine whether a claimant has a disability withing the meaning of the Social Security Act, the Commissioner engages in a five-step process. *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 111 (2d Cir. 2010) (quoting *Rosa v. Callahan*, 168 F. 3d 72, 77 (2d Cir. 1999)); *see also* 20 C.F.R. §§ 404.1520(a)(4). The Second Circuit has described this process as follows:

> [1] [T]he Commissioner considers whether the claimant is presently working in substantial gainful activity.
> [2] If the claimant is not so engaged, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to do basic work activities.
> [3] If the severity requirement is met, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in Appendix 1 of the regulations, or is equal to a listed impairment. If the claimant has such an impairment, there will be a finding of disability.
> [4] If not, the fourth inquiry is to determine whether, despite the claimant's severe impairment, the claimant"s [RFC] allows the claimant to perform his or her past work.
> [5] Finally, if a claimant is unable to perform past work, the Commissioner then determines whether there is other work, such as "light work" discussed infra, that the claimant could perform, taking into account, inter alia, the claimant's [RFC], age, education, and work experience.

*Selian v. Astrue*, 708 F.3d 409, 417-18 (2d Cir. 2013) (alterations omitted).

"The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and 'bears the burden of proving his or her case at steps one through four." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)(internal citations omitted).  However, in the last step, "the burden shifts to the Commissioner to show that there [are] a significant number of jobs in the national economy that [the claimant] could perform based on his residual functional capacity, age, education, and prior vocational experience." *Butts v. Barnhard*, 388 F.3d 377, 381 (2d Cir. 2004) (citing 20 C.F.R. §404.1560), *amended on reh'g*, 416 F.3d 101 (2d Cir. 2005); *see also* 20 C.F.R. §404.1520(a)(4)(v).

### 3. The ALJ's Decision

The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since December 1, 2016, the alleged onset date of disability.  R. at 12.  The ALJ concluded that Plaintiff had the following severe impairments: scoliosis of the thoracic spine, depressive disorder, anxiety disorder, and social phobia.  *Id*.  The ALJ determined that Plaintiff's impairments, alone or in combination, did not meet the medical equivalent to the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1 (the "Listings").  R. at 13.  The ALJ also concluded that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work as defined in 404.1567(b) and 416.967(b), except that she could not perform strict routine tasks, could not work with the general public, and production rate, recall and execution must be simple with minor changes in work setting and procedures.  R. at 13.  The ALJ considered Plaintiff's age, educational and vocational background, RFC, VE testimony, and the Medical-Vocational Guidelines 204.00, set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2.  R. at 18-19.  The ALJ concluded that with adjustments, there are a substantial amount of

11

available jobs Plaintiff can acquire and perform.  R. at 18-19.  Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act.  R. at 19.

## DISCUSSION

Plaintiff's challenge to the ALJ's decision concerns Step 4 of the ALJ's analysis.  Plaintiff claims that the ALJ erred in failing to properly consider three points of evidence in the record when finding that she was not disabled.  She argues that the ALJ failed to adequately consider her history of absences at work.  Plaintiff also argues that the ALJ did not properly weigh the testimony of Mr. Calandra, the vocational expert, and her psychiatrists.

### *The ALJ's Findings Support the Decision that Plaintiff Was Not Disabled*

Plaintiff argues that the ALJ's finding regarding Plaintiff's moderate limitations should have deemed her disabled.  The ALJ found that Plaintiff has moderate limitations "in understanding, remembering or applying information"; "interacting with others;" concentrating, persisting, or maintaining pace"; and in adapting or managing oneself. R. at 13.  Plaintiff supports this contention by pointing to the ALJ's embrace of Dr. Lieber-Diaz's opinion.  Additionally, the RFC assesses an individual's ability "to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).  "A 'regular and continuing basis means 8 hours a day, for 5 days a week, *or an equivalent work schedule*." *Id.* (emphasis added).  Plaintiff relies on Dr. Lieber-Diaz's statement that she is unable to work more than six hours in an 8-hour workday.  Yet, Dr. Lieber-Diaz also stated that she "would be capable of unskilled work in a setting that has limited contact with others." R. at 63.  Plaintiff makes no argument that she would be unable to find employment with an "equivalent work schedule."

### *The ALJ Gave Adequate Weight to Dr. Toba's Opinion.*

"Under the 'treating physician rule,' a treating physician's opinion will be given controlling weight if it is 'well- supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in . . . [the] record.'" *Finch v. Berryhill*, No. 17-CV-892, 2019 WL 1434621, at *11 (S.D.N.Y. Apr. 1, 2019) (quoting 20 C.F.R. § 404.1527(c)(2); see 20 C.F.R. § 416.927(c)(S)). However, where a treating physician issues an opinion "not consistent with other substantial evidence in the record, such as the opinions of other medical experts," no such deference is due. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal citation omitted). With these considerations in mind, the ALJ must then determine whether the opinion is entitled to controlling weight. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). The ALJ has discretion to resolve any conflicts in the record. *Veino v. Barnhart*, 312 F.3d 578, 488-89 (2d Cir. 2002).

The ALJ considered the Plaintiff's medical history, the medical opinion provided by Dr. Toba, Dr. Healy, and the State agency's psychological consultant, Dr. Lieber-Diaz, and the treatment regime Plaintiff underwent, in concluding that Plaintiff's residual functional capacity still allowed her to perform work with restrictions. The ALJ determined that the RFC assessment was supported by "claimant's reported activities of daily living, the frequency and nature of treatment sought and her reported response to interventions, objective medical evidence."

Plaintiff argues that the ALJ did not adequately weigh Dr. Toba's opinion when concluding that it was not supported by the record. Drs. Lieber-Diaz and Healy disagreed with Dr. Toba's assessment of Ms. Glover's limitations. But the ALJ concluded that Dr. Toba's medical source statement was "not supported by explanation and relevant medical evidence." R. at 17. Dr.

Toba's statement appears as a standard form with minimal notes on Ms. Glover's conditions. Further, the ALJ concluded that Dr. Toba's assessment of Ms. Glover's condition was inconsistent with her level of outpatient treatment as well as her improvement after medical treatment. That is, the ALJ concluded the limitations that Dr. Toba presented in her opinion would have required more extensive treatment.

The ALJ found that despite the Plaintiff's assertions, there was improvement. Both Plaintiff's physical and mental health had improved in response to outpatient treatment. The ALJ determined that Plaintiff's attention and concentration were within normal limits and that with continuous treatment, the Plaintiff is able to go outside a little more.

The record shows that Ms. Glover's conditions improved with her outpatient treatment. Despite her agoraphobia, Ms. Glover can go about daily life, including doing laundry at a laundromat, going to the park, and going to the beach. Ms. Glover also stated that she was able to take care of her eight-year-old son who has autism.

### *The ALJ Adequately Considered Mr. Calandra's Testimony*

Plaintiff further contends that the ALJ did not adequately consider Mr. Calandra's testimony. Plaintiff claims that Mr. Calandra's testimony regarding the inability for an individual to miss eight hours of work per month should have been a factor to Plaintiff's RFC to function in a work setting. They argue the decision neither referenced Plaintiff's absences nor Mr. Calandra's opinion on the employment opportunities available to someone in her position. However, the ALJ need not explicitly reference testimony. "Step Four findings need only afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence such that additional analysis would be unnecessary or superfluous." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (alterations and internal quotation marks

omitted); *see also* "the ALJ is not required to mention every piece of evidence but must provide an "accurate and logical bridge" between the evidence and the conclusion that the claimant is not disabled, so that "as a reviewing court, we may assess the validity of the agency" ultimate findings and afford the claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004).  The ALJ made the determination that there was sufficient evidence provided by the medical record, opinions provided and Plaintiff's treatment regime to find the Plaintiff capable of performing the demands of work with the stated limitations.  The ALJ discussed the improvement in both Ms. Glover's physical and mental health when partially complying with her treatment as well as her ability to engage in daily activities.

### *The ALJ Adequately Addressed Plaintiff's Subjective Statements*

Plaintiff claims that the ALJ did not properly address the subjective symptoms.  The ALJ's decision incorporated Plaintiff's representations of her medical record, but carefully scrutinized the inconsistencies.  Here, Plaintiff's argument relies only on its disagreement with the ALJ's decision.  Plaintiff points to no authority that the ALJ's consideration of her subjective statements should have outweighed the medical opinions and the totality of the record.

### CONCLUSION

For the reasons above, Plaintiff's motion is **DENIED**, and the Defendant's motion is **GRANTED**.  The Clerk of the Court is respectfully directed to terminate ECF Nos. 18, 22.

**SO ORDERED.**

Dated:     **March 31, 2022**
           **New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**